# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| DELTON YORK, | § |
| *Plaintiff*, | § |
| | § |
| v. | §   Civil Action No. SA-22-CV-00451-XR |
| | § |
| KIRAN AHUJA, DIRECTOR OF THE | § |
| U.S. OFFICE OF PERSONNEL | § |
| MANAGEMENT; | § |
| | § |
| *Defendant*. | |

## ORDER

On this date, the Court considered Defendant's partial motion to dismiss (ECF No. 24), Plaintiff's response (ECF No. 27), and Defendant's reply (ECF No. 28). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

Plaintiff Delton York brings this employment discrimination suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. ECF No. 22. Plaintiff alleges discrimination based on both his race and age. Plaintiff is African American and was born in 1965, making him over 40 years old at all times relevant to this suit. *Id*. ¶¶ 31, 32.

Defendant Kiran Ahuja is the Director of the U.S. Office of Personnel Management ("OPM") and is named in her official capacity pursuant to 42 U.S.C. § 2000e-16. *Id*. ¶ 4. Plaintiff began working for OPM on July 17, 2010. *Id*. ¶ 30. Plaintiff was employed by Defendant as a

---

[1] The facts in this section are based on the allegations in Plaintiff's First Amended Complaint (ECF No. 22), which the Court accepts as true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1

"career-ladder Human Resources Specialist under its Organization Design & Position Classification ('ODPC') unit" at all relevant times. *Id.* ¶ 5. Plaintiff's position was a "career ladder" position, permitting Defendant to promote Plaintiff to a successive grade level, without further competition, based on time and performance. *Id.* ¶¶ 35–42. Plaintiff alleges that he received positive reviews for his performance from 2011 through 2013 but was not promoted by his supervisor, Michelle Acara ("Acara"). *Id.* ¶¶ 43–45. Acara left her role as Plaintiff's supervisor in October 2013. *Id.* ¶ 49. Plaintiff thereafter alleges that from 2013 through September of 2014 (the end of OPM's fiscal year), he still was not promoted. *Id.* ¶ 64. During the time after Acara's departure, he was first supervised by Jason Parman ("Parman") (who had previously been his second-line supervisor), and eventually five other individuals (Yvonne Ryan, Firooz Basri, Morris Blakely, Rachelle Booth, and Laura Knowles). *Id*. ¶¶ 49–52. Of particular importance, Plaintiff alleges that Laura Knowles, a white woman under the age of 40 years old, was ultimately selected as his acting supervisor, despite having "less experience in organizational design and position classification than Plaintiff and many other African American co-workers did." *Id*. ¶¶ 58, 60.

On October 27, 2014, Plaintiff initiated EEO Counseling against Defendant. *Id.* ¶ 13. On January 20, 2015, Plaintiff then timely filed a formal EEO Complaint against Defendant, alleging discrimination and harassment on the basis of race, age, and retaliation in violation of Title VII and the ADEA. *Id*. ¶ 15.

On January 21, 2015, OPM issued an Acknowledgement Letter to Plaintiff. *Id*. ¶ 16. On January 22, 2015, OPM partially accepted Plaintiff's formal complaint, initiating an investigation into Plaintiff's alleged discrimination claims based on race, color, sex, disability, and age (stemming from Defendant's refusal to promote Plaintiff to the full GS-13 level of his position on or about September 16, 2014.) *Id*. ¶ 17.

On November 12, 2015, at the conclusion of OPM's investigation, Plaintiff requested an EEOC hearing in front of an Administrative Judge. *Id.* ¶ 18. There was then a two-year delay in the proceedings, which Plaintiff alleges was due to several of Defendant's counsel withdrawing, substituting out, or retiring. *Id.* ¶ 19.

Eventually, from August 19 through August 21, 2019, the EEOC held an in-person evidentiary hearing. *Id.* ¶ 21. Thereafter, the Administrative Judge issued a Decision and Order, entering a judgment partially in favor of Plaintiff and sanctioning Defendant for providing falsified evidence during the EEO investigation and failing to schedule and comply with a hearing for the EEOC case. *Id.* ¶ 22. Defendant appealed the Administrative Judge's decision to the Office of Federal Operations, which issued a ruling in favor of Defendant on July 15, 2021. *Id.* ¶ 25. The Office of Federal Operations upheld the Administrative Judge's decision as it related to Plaintiff's failure to state a prima facie case for discrimination and retaliation but overturned the Administrative Judge's decision as it related to granting sanctions. *Id.* ¶ 25. Plaintiff's motion for reconsideration was denied by the Office of Federal Operations on March 2, 2022. *Id.* ¶ 26. Plaintiff thereafter filed his original complaint on May 9, 2022. ECF No. 1. Plaintiff was never promoted to GS-13 and ultimately retired in 2020. *Id.* ¶¶ 128–29.

Plaintiff initially filed his complaint *pro* se. *Id.* After Plaintiff's counsel filed a notice of appearance, the Court directed Plaintiff to file his First Amended Complaint, the operative pleading. ECF No. 22. Defendant filed her partial motion to dismiss on March 10, 2023. ECF No. 24. Plaintiff responded on April 11, 2023 (ECF No. 27) and Defendant replied on April 18, 2023 (ECF No. 28).

Plaintiff alleges six adverse employment actions in his First Amended Complaint:

1. Non-selection for promotion to GS-13,
2. Failure to receive career development,
3. Refusal to appoint a technically competent permanent supervisor who could accurately assess Plaintiff's work,
4. Divulging confidential information about the Plaintiff,
5. Influencing acting managers and Plaintiff's former supervisor to submit a "Minimally Successful" performance evaluation, and
6. Knowingly transmitting false documents and information to the EEOC.

ECF No. 22 ¶¶ 138, 165.

Plaintiff also alleges that he was retaliated against for engaging in the following activities:

1. Openly questioning and challenging the promotion decisions of Hohman, Knowles, and Ryan for race / age discrimination from May 2014 through September 2014,
2. Participating in his own EEOC case,
3. Being perceived to have supported Douglas Robinson's[2] complaints of race / age discrimination case.

*Id*. ¶¶ 152, 179.

Defendant argues in her motion to dismiss that Plaintiff's discrimination claims should be dismissed to the extent they are untimely and/or predicated on actions that are not considered adverse employment actions. ECF No 24 at 1.[3] Defendant further argues that Plaintiff's retaliation claims should be dismissed entirely. *Id*.

---

[2] Plaintiff alleges in his First Amended Complaint that Douglas Robinson is "an African-American co-worker, [who] also complained about Knowles' promotion to GS-13 in 2014 over more qualified African American candidates who were older[.]" ECF No. 22 ¶ 121.

[3] Defendant does not seek to dismiss Plaintiff's claims of age and racial discrimination for his non-promotion from September 2, 2014 until October 27, 2014 (the first discriminatory action identified in Plaintiff's First Amended Complaint). ECF No. 24 at 1 n.1.

**DISCUSSION**

I. **Legal Standard**

   A. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

### B. Title VII Disparate Treatment Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment because of race or color. 42 U.S.C. § 2000e–2(a)(1). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Id.*

The Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell*

6

*Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.* Still, plaintiffs must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

The Fifth Circuit has explained that there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "*because of* her protected status." *Raj*, 714 F.3d at 331 (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004)); *see also id.* (explaining that a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably"); *Pacheco*, 448 F.3d at 787 (a "discriminatory motive is required" for disparate treatment claims). "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Pegram v. Honeywell*, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (quotations omitted).

If a plaintiff's disparate treatment claim depends on circumstantial evidence, she will "ultimately have to show" that she can satisfy the *McDonnell Douglas* framework. *Chhim*, 836 F.3d at 470 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*, a prima facie case of discrimination requires evidence that the plaintiff "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the

protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014)).

In cases involving circumstantial evidence, the Fifth Circuit has counseled that "it can be 'helpful to reference' [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citing *Chhim*, 836 F.3d at 470–71 (considering whether the plaintiff pleaded facts suggesting that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the *McDonnell Douglas* framework)). Still, courts must not inappropriately heighten the pleading standard in Title VII cases by "subjecting plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Id.* (citing *Swierkiewicz*, 534 U.S. at 512 (explaining "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'"). "Such inquiries are better suited to summary judgment." *Id.* (citing *Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014) (explaining "that further assessment of [appellant's] claim is fact-intensive and better suited for the summary-judgment or trial stage").

C. **Title VII Retaliation**

Title VII prohibits retaliation against an employee for engaging in conduct protected by Title VII. *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014). To establish a claim for retaliation under Title VII, the plaintiff must show that (1) she engaged in a protected activity; (2) there was a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015).

"Protected activity" is defined as "opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Green v. Admins. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) (citing 42 U.S.C. § 2000e–3(a)). The retaliation provisions of Title VII have been interpreted to "protect[] not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster*, 746 F.3d at 730. Less formal protests that are still protected under Title VII include "complaints to human resources personnel regarding potential violations of Title VII." *Id.* (quoting *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012)); *see also Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (concluding that, while opposition to discrimination need not be in formal written form, the plaintiff's internal complaints to management did not constitute a protected activity because "they did not reference discrimination or any other unlawful employment activity").

### D. ADEA Discrimination

To establish age discrimination under the ADEA, 29 U.S.C. § 623(a), a plaintiff must first "establish a prima facie case of discriminatory treatment based on age" by proving that (1) "they are within the protected class," (2) "they are qualified for the position," (3) "they suffered an adverse employment decision," and (4) "they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013) (quoting *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

"Because it is unlikely that there will be direct evidence of an employer's thought process[,] . . . ADEA claims typically rely on circumstantial evidence evaluated under the burden-shifting framework outlined in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973)." *Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 713 (5th Cir. 2016) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 141 (2000)).

Then, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). If the employer articulates a legitimate, nondiscriminatory reason for the employee's termination, "the presumption of discrimination raised by the plaintiff's prima facie case drops out and the plaintiff may attempt to prove discrimination by offering evidence that the employer's stated reason is pretextual." *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 395 (5th Cir. 2002). At this stage, the plaintiff is held to a preponderance of the evidence standard. *Goudeau*, 793 F.3d at 474. Ultimately, "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

### E. ADEA Retaliation

To establish retaliation under the ADEA, a similar standard governs. *See* 29 U.S.C. § 623(d). A plaintiff must first establish a prima facie case by showing "(1) that [she] engaged in a protected activity, (2) that there was an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496–97 (5th Cir. 2015) (citing *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001)). "With regard to the first element, a plaintiff has engaged in protected activity if he has 'opposed any practice' forbidden by the ADEA." *Heggemeier v.*

*Caldwell Cty., Tex.*, 826 F.3d 861, 869 (5th Cir. 2016). The burden then shifts (as described above). *See, e.g.*, *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 672 (S.D. Tex. 2013). "The plaintiff need not necessarily show that similarly situated employees were treated more favorably to establish a prima facie case of retaliation, though that evidence can bolster her case." *Davis v. United Health Servs.*, No. 1:18-CV-1093-RP, 2020 WL 33597, at *5 (W.D. Tex. Jan. 2, 2020) (citing *Heggemeier*, 826 F.3d at 867–68).

## II.     Analysis

### A.  Race and Age Discrimination

To begin, the Court agrees with Defendant's contention that any discrimination claims raised by Plaintiff that predate September 2, 2014 are administratively barred. While Plaintiff advances both waiver and tolling arguments, neither theory saves his case with regard to the merits of claims that predate the 45-day tolling window from the filing of his complaint on October 27, 2014 (with the exception of Plaintiff's allegation that OPM decided not to promote him in September or October of 2014, which Defendant does not seek to dismiss).

A federal employee is required to "initiate contact with [an EEO] counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The Fifth Circuit has repeatedly upheld dismissal in cases where a plaintiff has failed to raise an administrative discrimination complaint in a timely manner. *See, e.g., Yee*, 325 F. App'x at 379–80; *Reveles v. Napolitano*, 595 F. App'x 321, 325–26 (5th Cir. 2014).

Second, the Court holds that Plaintiff's race and age discrimination claims fail to allege adverse employment decisions and therefore fail as a matter of law. Plaintiff alleges six discriminatory actions in his First Amended Complaint:

11

1. Non-selection for promotion to GS-13,
2. Failure to receive career development,
3. Refusal to appoint a technically competent permanent supervisor who could accurately assess Plaintiff's work,
4. Divulging confidential information about the Plaintiff,
5. Influencing acting managers and Plaintiff's former supervisor to submit a "Minimally Successful" performance evaluation, and
6. Knowingly transmitting false documents and information to the EEOC.

ECF No. 22 ¶¶ 138, 165. As previously noted, Defendant does not seek to dismiss Plaintiff's first adverse action, that OPM decided not to promote him in September or October of 2014. The Court holds that Plaintiff's alleged adverse actions two through six do not constitute adverse employment actions. The Court therefore need not resolve whether Defendant's argument that Plaintiff's discrimination claims would otherwise fail because he does not plausibly allege a causal connection between his protected status and the adverse employment action.

The Court perceives Plaintiff's second alleged action, failure to receive career development, as akin to failure to train, which has not been recognized as an adverse employment action in the Fifth Circuit. *See, e.g.*, *Hollimon v. Potter*, 365 F. App'x 546, 549 (5th Cir. 2010) ("[A] refusal to train is not an adverse employment action under Title VII.").

Plaintiff's third alleged discriminatory action likewise fails to constitute an adverse employment action. The refusal to appoint a technically competent permanent supervisor who could accurately assess Plaintiff's work has been examined by other courts in the context of 1) reorganization of supervisors and 2) the appointment of a supervisor a plaintiff does not get along with. Those courts have held that those actions do not constitute adverse employment actions in that they do not affect a plaintiff's job duties, compensation, or benefits. *See, e.g.*, *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (reorganization and appointment of new supervisor was not adverse action); *see also Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (plaintiff's having to report to a former subordinate was not an adverse employment action). The

Court finds Plaintiff's alleged action similar in that it would not have an impact on his job duties, compensation, or benefits. The Court therefore holds that Plaintiff has failed to allege an adverse employment action in this regard.

Regarding Plaintiff's fourth and sixth alleged actions, courts have consistently held that divulging information to witnesses in a case in advance of mediation or transmitting false documents and information to the EEOC are not adverse employment actions in the Fifth Circuit. *See, e.g.*, *Paugh v. Lockheed Martin Corp.*, 474 F. Supp. 3d 861, 868 (W.D. Tex. 2020) (holding that "a false or misleading statements to the EEOC is not a legally actionable adverse employment action"). Again, the Court agrees that, even taking all of Plaintiff's factual allegations as true and construing them in the light most favorable to him, this does not constitute adverse employment action because it does not affect his job duties, compensation, or benefits. *See Pegram*, 361 F.3d at 282.

Finally, Plaintiff, in support of his fifth alleged adverse employment action, argues that a "negative performance review is an ultimate employment decision because it made Plaintiff ineligible for a career ladder promotion." ECF No. 27 at 6. The Fifth Circuit, however, disagrees. A performance review, standing alone, "plainly does not meet the ultimate-employment-decision test." *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009).

Plaintiff's age discrimination claims fail for the same reasons as explained above. The Court therefore holds that Plaintiff's age and race discrimination claims fail as a matter of law because besides Plaintiff's claim of non-promotion, which remains pending, Plaintiff's claims do not constitute adverse employment actions and must be dismissed.

### B.  Race and Age Retaliation

Defendant first challenges Plaintiff's retaliation claims on the basis that many of the alleged adverse employment actions took place before the alleged protected activity. *See* ECF No. 24 at 13–14 (table describing various alleged employment actions in the First Amended Complaint and the date upon which they occurred, contrasted with the date of the EEO Complaint). Defendant next challenges whether Plaintiff has sufficiently alleged protected activity. *See id*. at 15 ("If either the 'open questioning of promotion decisions,' or the vague statement regarding his 'support' for Mr. Robinson establishes that Plaintiff engaged in protected activity, then the FY14 performance evaluation would be, chronologically, a potentially retaliatory act. This Amended Complaint, however, omits far too much detail regarding either of these claims to establish a plausible claim that Mr. York engaged in protected activity before October 27, 2014."[4]). Finally, while Defendant acknowledges that the standard for determining an adverse employment action in the retaliation contexts differs somewhat from the discrimination context, she contends that even under the broader standard, Plaintiff's claims fail.

First, the Court addresses Defendant's contention that Plaintiff has failed to sufficiently allege protected activity. As previously mentioned, Plaintiff alleges that he was retaliated against for:

1. Openly questioning and challenging the promotion decisions of Hohman, Knowles, and Ryan for race / age discrimination from May 2014 through September 2014,
2. Participating in his own EEOC case,
3. Being perceived to have supported Douglas Robinson's complaints of race / age discrimination case.

ECF No. 22 *Id*. ¶¶ 152, 179. Plaintiff's First Amended Complaint includes no details whatsoever to support his contention that his first and third actions constitute protected activity. In his

---

[4] October 27, 2014 is the EEO Complaint date, which Defendant acknowledges is protected activity.

response, Plaintiff states, for the first time, that September 30, 2014 was the date of the last incident of his questioning and voicing concerns about OPM's promotion decisions. Neither Plaintiff's Amended Complaint nor his response, however, offer any details about when Mr. Robinson made his complaints or when OPM "perceived" Plaintiff as being supporting of them.

Plaintiff's first and third alleged protected activities fail because they are vague and conclusory. Plaintiff includes no factual information about who he complained to, who he openly questioned or challenged, or who from OPM perceived him as being supportive of Robinson's complaints. Taking Plaintiff's allegations as true and construing them in the light most favorable to him, he fails to allege the types of activities that the retaliation provisions of Title VII have been interpreted to protect. He has provided no details about whether these complaints were to management or would otherwise be the type of formal protests of discriminatory employment practices protected. *See Laster*, 746 F.3d at 730.

Defendant acknowledges, and the Court agrees, that Plaintiff's second alleged activity, participating in his own EEOC case, constitutes protected activity. Because the Court concludes this is the only protected activity Plaintiff has sufficiently alleged, any adverse employment action alleged by Plaintiff must have taken place after October 27, 2014, the date Plaintiff filed his EEO Complaint. The Amended Complaint alleges that because of Plaintiff's engaging in this protected activity, he was subjected to the six adverse employment actions identified in relation to his discrimination claims. *Id*. ¶¶ 153, 180.

As Defendant points out, Plaintiff's receiving a "minimally successful" performance evaluation for FY14 could not have occurred after September 30, 2014, the end of OPM's Fiscal Year 2014. *See* ECF No. 24 at 14 n.11. This adverse action could not have occurred after Plaintiff filed his EEO Complaint and therefore fails. Similarly, Plaintiff's non-selection for promotion to

15

GS-13 occurred before Plaintiff filed his EEO Complaint and therefore cannot constitute an adverse employment action he suffered as retaliation for his participation in his EEOC case.

The only adverse employment actions that could have occurred after Plaintiff filed his EEO Complaint would have been: failure to receive career development, refusal to appoint a technically competent permanent supervisor who could accurately assess Plaintiff's work, divulging confidential information about the Plaintiff, or knowingly transmitting false documents and information to the EEOC. *See* ECF No. 22 ¶¶ 138, 165. The Court will address each alleged adverse action in turn.

Regarding failure to receive career development, even in the retaliation context and at the motion to dismiss stage, "a denial of training is not, under the circumstances the plaintiff's presents, an adverse employment action." *Coleman v. Wilson*, No. CV SA-17-CA-819-FB, 2018 WL 11355473, at *10 (W.D. Tex. Sept. 28, 2018).

Next, the Court holds that both the divulging of confidential information about the Plaintiff and knowingly transmitting false documents and information to the EEOC are not adverse employment actions in the retaliation context. As the Fifth Circuit explained in *Paugh*, "alleged false statements by [employer] to the EEOC alone cannot constitute an adverse employment action because they would not deter a reasonable worker from making or supporting a charge of discrimination." 474 F. Supp. 3d at 867.

Finally, and at this stage, the Court holds that Plaintiff has failed to establish that Defendant's refusal to appoint a technically competent permanent supervisor who could accurately assess Plaintiff's work constitutes adverse actions in the context of a retaliation claim. Even analyzing an adverse employment action under its broader definition in the retaliation context than in the discrimination context, the Court finds that Plaintiff has not plausibly alleged that he was

16

retaliated against for filing an EEO Complaint and participating in his EEOC case. *See, e.g.*, *Porter v. Houma Terrebonne Hous. Auth. B.d of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) ("In *Burlington Northern*,[5] the Supreme Court clarified that the 'adverse employment action' is in fact not limited to 'workplace-related or employment-related retaliatory acts and harm.' The key question is whether the challenged action is 'materially adverse' in that it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.' The standard is objective, but 'the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'"). Adverse employment action is judged by a "reasonable employee" standard, i.e., whether alleged conduct would dissuade "a reasonable employee" from protected activity, so the determination of whether an action constitutes an adverse employment action in the retaliation context often depends upon the particular circumstances of each case. *Porter*, 810 F.3d at 945–46. The Court concludes that Defendant's failure to appoint a technically competent permanent supervisor would not be the type of action that would dissuade a reasonable working from making or supporting a charge of discrimination under the circumstances Plaintiff has alleged.

### III. Leave to Amend

Finally, Defendant contends that the Court should not grant Plaintiff leave to amend his complaint again, as his claims have already been made twice, both *pro se* and with the advice of counsel.

Because the Court allowed Plaintiff to amend his complaint and, with advice of counsel, he has still failed to cure the deficiencies in his pleadings, the Court holds that further leave to amend is futile. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v.*

---

[5] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

*Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)) (in making the determination to deny leave to amend, the Court considers the following: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment"). Having considered these factors, the Court denies Plaintiff leave to amend his complaint. Subjective belief of discrimination, however genuine, and conclusory statements cannot be the basis of judicial relief. *See Jones v. Gulf Coast Rest. Grp., Inc.*, No. 21-60052, 2021 WL 3465000, at *4 (5th Cir. Aug. 6, 2021).

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss Plaintiff's First Amended complaint (ECF No. 24) is **GRANTED.** Plaintiff's claims for age and race discrimination as they relate to Plaintiff's non-promotion from September 2, 2014, until October 27, 2014 (the first discriminatory action identified in Plaintiff's First Amended Complaint) remain pending. Plaintiff's other claims for age and race discrimination and retaliation are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** this 13th day of June, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE